NOTICE

Decision filed 05/07/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190441-U

NO. 5-19-0441

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* PARENTAGE OF A.M. and D.M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (Drevon Moore, | ) | Jackson County. |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-F-21 |
| | ) | |
| Stephanie Fruits, | ) | |
| | ) | |
|     Respondent | ) | |
| | ) | Honorable |
| (Ruby McRoy and Christoper McRoy, Intervenors- | ) | Michael A. Fiello, |
| Appellants)). | ) | Judge, presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appeal dismissed for lack of appellate jurisdiction where the circuit court's denial of intervenors' motion to dismiss was not a final and appealable order.

¶ 2    Ruby and Christopher McRoy (McRoys), intervenors-appellants and guardians of A.M. and D.M., appeal from the circuit court's order denying their motion to dismiss the parentage petition filed by Drevon Moore, petitioner-appellee, and the alleged biological father of A.M. and D.M., pursuant to the Illinois Parentage Act of 2015 (Act) (750 ILCS 46/101 *et seq.* (West 2018)). On appeal, the McRoys argue that the court erred in finding the two-year statute of

1

limitations under the Act (750 ILCS 46/608(a) (West 2018)) inapplicable. For the following reasons, we dismiss for lack of appellate jurisdiction.

¶ 3                                I. Background

¶ 4    At the outset, we note that this appeal was placed on an accelerated docket schedule under the provisions of Illinois Supreme Court Rule 311(a) (eff. July 1, 2018), with a decision due by March 20, 2020. However, our decision is being issued beyond this date for good cause, as motions for extensions of time resulted in delays in the corresponding briefing schedule. See Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). We now issue our disposition.

¶ 5    On November 21, 2016, Stephanie Fruits gave birth to twins, A.M. and D.M. Stephanie and Richard Fruits were a married couple at the time of the children's births.

¶ 6    On August 15, 2018, the McRoys filed an emergency petition for temporary and plenary guardianship of the children, pursuant to the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-8(a) (West 2018)), and were appointed plenary guardians on November 29, 2018. The plenary order stated, *inter alia*, that (1) the McRoys, Stephanie's paternal aunt and uncle, have been the children's primary caregivers since September 9, 2017; (2) "[o]n February 12, 2018, [Stephanie] executed notarized Consents for Guardianship appointing [the McRoys] as guardians of the children"; (3) "[Richard] is the presumed father, although not the biological father, of the minor children ***"; (4) no other persons alleging to be the biological father had filed any pleadings or sought to intervene in the case, including Drevon Moore; (5) "[t]he child's [*sic*] presumed father, [Richard], is unwilling to care for the children and has executed a Consent for Guardianship"; and (6) the parents of the minor children are unable and unwilling to care for and make daily child care decisions on behalf of the minor children.

2

¶ 7　　On February 4, 2019, approximately 26 months after the children's births, Drevon filed a petition to establish parental relationship, parenting responsibilities, and parenting time. In support of the petition, Drevon attached two exhibits, a voluntary acknowledgment of paternity, dated January 30, 2019, and a DNA test result showing a 99.999999998% probability of paternity, dated August 20, 2018.

¶ 8　　On March 26, 2019, the McRoys filed a petition to intervene in the parentage case, a petition for adoption of the children, and a motion to consolidate the guardianship, parentage, and adoption cases. Drevon subsequently agreed to the McRoys' petition to intervene but objected to the consolidation of the cases prior to the circuit court entering an order of paternity.

¶ 9　　On May 23, 2019, the McRoys filed a combined motion to strike and dismiss, requesting that the circuit court strike Drevon's exhibits—the acknowledgment of paternity and DNA test results—and dismiss the parentage action. In support, the McRoys asserted that the acknowledgment of paternity was insufficient and void under the Act (750 ILCS 46/302 *et seq*. (West 2018)), because it was not signed by the children's mother, failed to state that the children had a presumed parent, and did not acknowledge Richard as the presumed father. Next, the McRoys asserted that the DNA test results were insufficient under the Act (750 ILCS 46/614(a) (West 2018)) because the testing was not performed with Richard's consent, pursuant to court order, and did not exclude Richard as the children's biological father. The McRoys also asserted that the results were insufficient under the Act (750 ILCS 46/403(a) (West 2018)) because the results were not supported by a chain of custody affidavit or certificate. Lastly, the McRoys asserted that the parentage action had been filed three months after the two-year statute of limitations had expired. 750 ILCS 46/608(a) (West 2016).

¶ 10    On July 19, 2019, after the parties filed several corresponding pleadings and memorandums, the circuit court held a hearing on the McRoys' motion to strike and dismiss. During the hearing, the McRoys submitted a copy of a marriage certificate to demonstrate that Richard and Stephanie were married at the time of the children's births, thereby establishing Richard as the children's presumed father. The McRoys also submitted an affidavit from Stephanie, stating that she had a prior sexual relationship with Drevon and, while pregnant, had informed Drevon that he was possibly the children's father. Drevon, the only witness, testified that Stephanie had informed him, prior to the children's births, that "[i]t might be a possibility" that he was the father. Drevon also testified that he was at the hospital at the time of the children's births on November 21, 2016, but Richard was not present. Following argument by both parties, the court took the matter under advisement.

¶ 11    On July 25, 2019, the circuit court entered an order granting the motion to strike, finding both exhibits deficient, but denying the motion to dismiss. In denying the motion to dismiss, the court found that Richard was the presumed father of the children from their births until November 29, 2018, the date the guardianship court made a finding that Richard was not the biological father of the children. The court also expressed that "[o]nce the [guardianship court] made that finding[,] there was no longer a presumed father." Thus, the court ruled that the two-year statute of limitations was inapplicable, and denied the motion to dismiss.

¶ 12    On August 21, 2019, the McRoys filed a motion to reconsider the denial of the motion to dismiss, which was subsequently denied on September 26, 2019. The McRoys appealed.

¶ 13                                    II. Analysis

¶ 14    On appeal, the McRoys assert that the two-year statute of limitations bars Drevon's parentage action where, contrary to the circuit court's determination, the earlier guardianship

4

order did not "disestablish" Richard as a presumed father. Therefore, the McRoys argue that the court erred in denying the motion to dismiss. In contrast, while Drevon readily admits that the guardianship proceeding was not intended "for disestablishment purposes," he argues the proceeding allowed for fact finding by which the court was able to find "a rebuttal of a presumption of parentage."

¶ 15 Although the parties do not challenge our jurisdiction to review the circuit court's judgment, before reaching the merits of this case, we have a duty to consider our appellate jurisdiction *sua sponte*. See *In re Marriage of Mackin*, 391 Ill. App. 3d 518, 519 (2009) (appellate courts have a duty to consider, *sua sponte*, jurisdiction over an appeal and to dismiss the appeal if jurisdiction is lacking). We review the question of our appellate jurisdiction *de novo*. *In re Marriage of Padilla*, 2017 IL App (1st) 170215, ¶ 13.

¶ 16 Only final judgments or orders are appealable as of right unless the particular order falls within one of the specified exceptions enumerated by Illinois Supreme Court rules governing interlocutory appeals as of right. *Inland Commercial Property Management, Inc. v. HOB I Holding Corp.*, 2015 IL App (1st) 141051, ¶ 17; *Mund v. Brown*, 393 Ill. App. 3d 994, 996 (2009). A final order is an order that either terminates the litigation between the parties on the merits or disposes of the rights of the parties in regard to the entire controversy or some definite part thereof. *Cohen v. Sterling Nursing Home, Inc.*, 57 Ill. App. 3d 162, 163 (1978). Courts have long held that "[a]n order denying a motion to dismiss, like the order at issue in this case, generally is not a final appealable judgment, as it does not conclusively determine the parties' rights or interfere with the continuation of the proceedings." *In re Estate of Cerami*, 2018 IL App (1st) 172073, ¶ 34. Rather, such an order is merely an interlocutory order which does not finally dispose of the proceeding in such a way as to give the appellate court jurisdiction. See *George F.*

*Mueller & Sons, Inc. v. Daly*, 124 Ill. App. 2d 265, 267 (1970) ("The denial of a motion to strike or dismiss, of itself, is not a final and appealable order within the purview of the Civil Practice Act ***.").

¶ 17    The McRoys, nevertheless, maintain that our jurisdiction lies under one of the exceptions enumerated by Illinois Supreme Court Rule 304 (eff. Mar. 8, 2016), which governs "Appeals from *Final* Judgments that do not Dispose of an Entire Proceeding." (Emphasis added.) First, the McRoys assert that our jurisdiction lies under Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016), which states that an immediate appeal may be taken from "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." In support, the McRoys argue that the circuit court interpreted the previous guardianship order as terminating Richard's status as a presumed father of the children; thus, this court has jurisdiction to review the claimed error. We disagree.

¶ 18    Here, the denial order was not entered "in the administration of an estate, guardianship, or similar proceeding," as required by Rule 304(b)(1), but rather in a separate paternity action. Accordingly, we will not broaden Rule 304(b)(1) to encompass circuit court orders entered in a paternity action that deny a motion to dismiss, a nonfinal order, simply because the court construed a previous guardianship order in rendering a decision. See *Eyster v. Conrad*, 2020 IL App (5th) 180261, ¶ 24 (when interpreting a supreme court rule, the "plain and ordinary meaning" of its language is the best indicator of the drafters' intent, and, where the language is clear and unambiguous, we apply the language used without further aids of construction). Even assuming *arguendo* that the paternity action constituted a "similar proceeding" under Rule 304(b)(1), the order did not finally determine a right or status of either party. That is, the resolution of the children's paternity, Drevon's petition claiming that he is the children's

6

biological father, and the McRoys' status as the children's guardians, remain unaffected. Simply put, the order does not permanently resolve any of the pertinent matters pending in the case. Thus, the court's order does fall within the exception enumerated in Rule 304(b)(1).

¶ 19    The McRoys next argue that our jurisdiction lies under Illinois Supreme Court Rule 304(b)(6) (eff. Mar. 8, 2016), which states that an immediate appeal may be taken from "[a] custody or allocation of parental responsibilities judgment or modification of such judgment entered pursuant to the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.*) or [the Act] (750 ILCS 46/101 *et seq.*)." In support, the McRoys argue that the circuit court effectively terminated Richard's custody rights in finding that the previous guardianship order terminated Richard's status as the children's presumed father. We find this argument meritless.

¶ 20    Here, the record demonstrates, and the parties do not dispute, that the circuit court previously granted the McRoys physical custody of the children, with the consent of Stephanie and Richard, in the guardianship proceedings, pursuant to the Probate Act (755 ILCS 5/11-8(a) (West 2018)). Nothing contained in the court's order denying the McRoys' motion to dismiss in the present paternity case, a separate action governed by the Act (750 ILCS 46/101 *et seq.* (West 2018)), could be reasonably viewed as a custody order or a modification of such order in the prior guardianship case, as required by Rule 304(b)(6). The previous custody and guardianship provisions, as provided in the guardianship order, remain unchanged. Thus, the court's order does not fall within the exception enumerated in Rule 304(b)(6).

¶ 21    In light of the foregoing, we find that this court lacks jurisdiction to review a challenge to the order denying the motion to dismiss. Accordingly, we dismiss this appeal. In dismissing this appeal, we express no opinion as to the merits of the issues presented.

7

¶ 22                                    III. Conclusion

¶ 23    Based on the foregoing, we dismiss this appeal for lack of appellate jurisdiction where the circuit court's denial of the motion to dismiss is not a final and appealable order or otherwise permitted under the Illinois Supreme Court rules.


¶ 24    Appeal dismissed.